IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

RANDY M. PARTEE                                                                                    PLAINTIFF

v.                                          Case No. 3:12-CV-03107

BAXTER INTERNATIONAL INCORPORATED
and BAXTER HEALTHCARE CORPORATION                                           DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

Plaintiff Randy M. Partee brings this action pursuant to the provisions of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, alleging Defendants Baxter International Incorporated and Baxter Healthcare Corporation (collectively "Baxter") wrongly denied his claim for disability benefits. Before the Court are the Administrative Record (Doc. 12), Plaintiff's Brief (Doc. 14), and Defendants' Brief (Doc. 17). For the reasons stated herein, the Court finds that Defendants' decision to deny benefits is AFFIRMED, Plaintiff's claim is DENIED, and this case is DISMISSED WITH PREJUDICE.

**I. Background**

Partee worked full time at Baxter as a Level 4 Extruder/Blender Operator in a department that manufactures plastic sheeting. His tasks included setting up, adjusting, and performing minor repairs to complex production equipment and monitoring such equipment for needed adjustments. On August 29, 2010, Partee stopped working due to back pain. He subsequently reported suffering from pain in multiple areas of his body including his joints, and he also complained of fatigue, poor sleep, and depression due to chronic pain. He visited a number of doctors to evaluate and treat his complaints of pain, including Dr. George Lawrence, who examined Partee on August 31, 2010, and

noted "back pain with increasing myalgias and malaise that was getting worse." (Doc. 12-3, p. 12). Then on September 8, 2010, Partee met with Dr. Safwan Sakr, a rheumatologist who documented Partee's lower back pain that had "started to be wide spread, affecting peripheral joints and associated with fatigue, poor sleep and depression." *Id.* at p. 14. Dr. Sakr also observed Partee's diffusely tender peripheral joints and diagnosed Partee with fibromyalgia syndrome and degenerative disc disease. *Id.* at p. 17.

Because Partee was a participant in Baxter's Short-Term Disability Plan ("the Plan"), he was initially approved for short-term disability benefits as of August 20, 2010, to be paid through September 20, 2010. Partee actually began to receive payments on September 24, 2010, and payments continued through October 11, 2010.

On September 27, 2010, Partee visited Dr. Lawrence again, and Dr. Lawrence made a written report of Partee's complaints of ongoing back and neck pain. Dr. Lawrence continued to be mystified as to the source of Partee's complaints of pain and commented, "I do not see anything that severe causing the problems, but [Partee] states that he is unable to work at this time." (Doc. 12-1, p. 152). A couple of weeks later, on October 10, 2010, Dr. Lawrence noted in a written report, "Patient states he is unable to perform the tasks of his job." (Doc. 12-3, p. 19). Dr. Lawrence then recommended that Partee be restricted to sedentary work due to "back pain" until such time as Partee could be seen by a specialist. *Id.*

On October 29, 2010, Partee saw Dr. Thomas Briggs, a surgeon specializing in the spine and back. Dr. Briggs performed diagnostic imaging scans on Partee's spine and found only a mild degree of degenerative disc disease at C5-6 and no results that would justify surgery. (Doc. 12-1, p. 102). All nerve studies conducted by Dr. Briggs failed to show any abnormalities in Partee. *Id.* at p. 111.

When Partee returned for a follow-up visit to Dr. Lawrence on October 26, 2010, the doctor repeated that he could not find any objective evidence for Partee's pain and could not "see any real reason why he continues to have to miss work for his pain." (Doc. 12-3, p. 21). Shortly thereafter, Baxter's Plan administrator, Liberty Mutual, reviewed Partee's claim for continuing benefits and informed him in a letter dated November 17, 2010, that he was no longer entitled to benefits as of October 12, 2010. The letter stated that after reviewing the reports of Drs. Lawrence and Briggs, Liberty Mutual had determined that there was no medical evidence to substantiate Partee's complaints of functional deficits, and any restrictions or limitations on working were not medically supported. *Id.* at p. 24.

On November 24, 2010, Partee made his first appeal of the decision to deny him short-term disability benefits. *Id.* at p. 27. Liberty Mutual denied this appeal by letter dated February 22, 2011, noting that the medical records submitted in support of Partee's disability claim to date lacked evidence of any musculoskeletal impairment that would warrant restrictions and limitations beyond October 11, 2010. *Id.* at p. 30. The denial was supported by the opinion of a Disability Nurse Case Manager, who noted that "no physician has recommended activity restrictions and as noted in previous reviews, the claimant was previously given an out of work note at his request without any correlating clinical support." *Id.*

On August 19, 2011, Partee's second appeal of the denial of benefits was submitted through his attorney. *Id.* at p. 50. In support of this appeal, Partee submitted new medical documentation for his claims, including records for approximately ten weeks of physical therapy, reports from the Springfield Neurological and Spine Institute, updated records from Drs. Lawrence and Briggs, and a report summarizing a neuropsychological examination conducted by Dr. Vann Smith, dated August

2, 2011. *Id.* In particular, Dr. Smith's report asserted for the first time that Partee's chronic pain had caused him to develop a cognitive disorder and "traumatic brain injury." *Id.* at p. 42-43. Partee also submitted records from Dr. Anne Winkler, a rheumatologist, who noted on March 20, 2011, that in her opinion Partee did not meet the diagnosis of fibromyalgia despite his complaints of chronic pain. *Id.* at p. 34. Finally, a new report by Dr. Briggs made on April 22, 2011, concluded that Partee had no neurological problems, and surgical intervention was not recommended. *Id.* at p. 37.

After receiving Partee's second appeal, Baxter referred the file for independent peer review. This review was conducted by Dr. Raymond Chagnon, a board-certified physical medicine and rehabilitation specialist. Dr. Chagnon concluded after examining Partee's medical documents that nothing in Partee's CT scans, x-rays, myelograms, of MRIs constituted objective evidence supporting him being out of work. *Id.* at p. 60. Dr. Chagnon noted in particular Dr. Winkler's opinion that Partee did not meet the criteria for having fibromyalgia and Dr. Briggs's finding that Partee would not benefit from having surgery. Dr. Chagnon believed that based on the medical record, Partee could return to work.

On September 27, 2011, the Administrative Committee of Baxter's Plan denied Partee's second and final appeal of his denial of benefits. *Id.* at p. 1. The Committee found that there were "no objective findings that would prevent Mr. Partee from performing the substantial and material duties of his current job on a full time basis." *Id.* The Committee further noted that "reports of exams did not document any evidence of impairment such as joint swelling, reduced range of motion, weakness, or atrophy." *Id.* Having exhausted his administrative remedies, Partee filed a complaint in this Court on August 10, 2012, seeking review of Baxter's decision.

**II. Standard of Review**

Generally, once a plaintiff has exhausted his administrative remedies, the court's function is to conduct a review of the record that was before the administrator of the plan when the claim was denied. *Farfalla v. Mutual of Omaha Ins. Co.*, 324 F.3d 971, 974-75 (8th Cir. 2003); *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). A denial-of-benefits claim under ERISA is reviewed for an abuse of discretion when "a plan gives the administrator discretionary power to construe uncertain terms or to make eligibility determinations." *King v. Hartford Life & Accident Ins. Co.*, 414 F.3d 994, 998-99 (8th Cir. 1997) (en banc) (citing *Firestone*, 489 U.S. at 111). When a plan confers discretionary authority, then the Court must defer to the determination made by the administrator or fiduciary unless such determination is arbitrary and capricious. *Firestone*, 489 U.S. 115. "[R]eview for an 'abuse of discretion' or for being 'arbitrary and capricious' is a distinction without a difference" because the terms are generally interchangeable. *Jackson v. Prudential Ins. Co. of Am.*, 530 F.3d 696, 701 (8th Cir. 2008), citing *Schatz v. Mutual of Omaha Ins. Co.*, 220 F.3d 944, 946 n.4 (8th Cir. 2000).

The Court finds that in the case at bar, abuse of discretion is the proper standard of review. The Plan grants discretionary authority to Baxter to both interpret and administer its provisions. (Doc. 1-1, p. 5). Baxter is not, however, the Plan's insurer. A separate entity insures the Plan. Baxter contracts with Liberty Mutual to serve as Baxter's claims administrator for purposes of each claimant's initial claim and appeal only. Considering these facts, a heightened standard of review due to a structural conflict of interest is not warranted, as Baxter does not simultaneously determine eligibility for benefits and pay benefits out of its own pocket as insurer. *See Atkins v. Prudential Ins. Co.*, 404 F. Appx. 82, 86 (8th Cir. 2010) (structural conflict of interest is factor to consider on review of ERISA-based claim when same party is both insurer and claims administrator).

The law is clear that the decision of a plan administrator may only be overturned if it is not "reasonable, i.e., supported by substantial evidence." *Donaho v. FMC Corp.*, 74 F.3d 894, 899 (8th Cir. 1996). An administrator's decision will be deemed reasonable if "a reasonable person *could* have reached a similar decision, given the evidence before him, not that a reasonable person *would* have reached that decision." *Id.* If a decision is supported by a reasonable explanation, it should not be disturbed, even though a different reasonable interpretation could have been made. *Cash v. Wal-Mart Group Health Plan*, 107 F.3d 637, (8th Cir. 1997), citing *Donaho*, 74 F.3d at 899.

Furthermore, "an ERISA plan administrator or fiduciary generally is not bound by [a Social Security Administration] determination that a plan participant is disabled." *Jackson v. Metro Life Ins. Co.*, 303 F.3d 884, 889 (8th Cir. 2002). Although Partee was awarded Social Security disability benefits, Baxter was not obligated under law to take the Social Security Administration's decision into account when deciding whether to award Plan benefits. *Jackson*, 303 F.3d at 889 (discussing why determinations of the Social Security Administration are not binding on a plan fiduciary, pursuant to ERISA). Accordingly, it was not an abuse of discretion for Baxter to have come to a different conclusion than the Social Security Administration regarding Partee's eligibility for disability benefits.

The Court's task now is to analyze whether Baxter's decision to deny benefits to Partee was an abuse of discretion. In considering this question, the Court must examine the basis behind the denial and determine if the decision was supported by substantial evidence. This evidence should be assessed by its quantity and quality, and this review, "though deferential, is not tantamount to rubber-stamping the result." *Torres v. Unum Life Ins. Co. of Am.*, 405 F.3d 670, 680 (8th Cir. 2005).

There are five factors the Court will consider to determine whether Baxter's decision was

reasonable:

> (1) whether the administrator's interpretation is consistent with the goals of the Plan;
> (2) whether the interpretation renders any language in the Plan meaningless or internally inconsistent;
> (3) whether the administrator's interpretation conflicts with the substantive or procedural requirements of the ERISA statute;
> (4) whether the administrator interpreted the relevant terms consistently; and
> (5) whether the interpretation is contrary to the clear language of the Plan.

*Id.* (citing *Shelton v. ContiGroup Cos., Inc.*, 285 F.3d 640, 643 (8th Cir. 2002)).

### III. Discussion

Pursuant to the Eighth Circuit's holding in *Shelton v. ContiGroup*, the first factor the Court must consider in evaluating the reasonableness of Baxter's denial of ERISA benefits is whether Baxter's interpretation of the Plan was consistent with the goals of the Plan. 285 F.3d at 643. The Plan's goal, as stated in Section 1.02, entitled "Purpose," is "(i) to offer eligible Employees an opportunity to obtain certain health, dental, life, accident, disability and other benefits; (ii) to provide eligible Employees an opportunity to pay for certain benefits on a pre-tax basis; and (iii) to provide eligible Employees an opportunity to fund certain qualifying unreimbursed Healthcare Expenses and certain qualifying Dependent Care Expenses on a pre-tax basis." (Doc. 1-1, p. 5).

The Plan defines a "disability" as follows:

> To be considered disabled under the Plan because of an injury, illness, or pregnancy, you must:
> • be continuously unable to perform the substantial and material duties of your current job on a full time basis (your regular pre-disability work schedule); and
> • be under the regular care of a licensed physician (other than a family member or yourself, if you are a physician).

(Doc. 12-2, p. 119).

Considering the Plan's goal of providing benefits to employees who are considered disabled

such that they are continuously unable to perform the substantial and material duties of their current jobs on a full-time basis, the Court finds that the medical data present in Partee's file was reasonably interpreted by the Plan administrator and led to a finding that Partee was ineligible for short-term disability benefits.

The record reflects that Partee's treating physicians reported Partee's complaints of back pain, joint pain, depression, and sleeplessness. However, none of these treating physicians were able to substantiate with objective evidence a cause for Partee's chronic pain or justify why such pain would render him unable to perform his particular job duties at Baxter. Moreover, while one of Partee's physicians, Dr. Sakr, found Partee's symptoms to be consistent with fibromyalgia, another physician, Dr. Winkler, disputed that Partee had fibromyalgia at all. The physician who saw Partee most regularly, Dr. Lawrence, reported that he could not find any objective evidence for Partee's pain or see any real reason why Partee continued to miss work for his pain. Finally, the evidence collected from diagnostic imaging scans, neurological scans, and other objective testing did not yield remarkable results.

The Eighth Circuit has held that when doctors' opinions provide no reliable objective evidence to support a finding, "[i]t is not unreasonable for a plan administrator to deny benefits based upon a lack of objective evidence." *McGee v. Reliance Standard Life Ins. Co.*, 360 F.3d 921, 924-25 (8th Cir. 2004). The fact is that none of Partee's treating physicians—with the sole exception of Dr. Smith, the neuropsychologist who diagnosed Partee with "cognitive dysfunction" as a result of back pain—prescribed specific work restrictions or were able to justify Partee's continued absence from work. Dr. Smith's testing results and conclusions did not coincide with any of the reports of the other treating physicians who found no objective reason for Partee's complaints of debilitating

pain. Accordingly, Baxter's decision to ignore the opinion of Dr. Smith in favor of crediting the opinions of Partee's other physicians was reasonable and not an abuse of discretion. *See Delta Family-Care Disability & Survivorship Plan v. Marshall*, 258 F.3d 834, 843 (8th Cir. 2001) ("Where the record reflects conflicting medical opinions, the plan administrator does not abuse its discretion in finding the employee not to be disabled.").

Turning to the first *Shelton* factor, this weighs in favor of Baxter. To the extent that Partee's pain, sleeplessness, and depression qualifies as an "illness" under the Plan, the Plan specifically provides that disability benefits are only to be paid if the claimed illness renders the claimant completely unable to perform the substantial and material duties of his current job. Since Partee's medical records do not provide objective evidence that his complaints of pain, fatigue, or depression qualify as a disability under the Plan, Baxter's decision to deny Partee disability benefits was not contrary to the goals of the Plan and was, in fact, reasonable and supported by the objective evidence.

The second *Shelton* factor also weighs in Baxter's favor. This factor requires the Court to evaluate whether Baxter's interpretation of the Plan with respect to Partee's claim rendered any language in the Plan meaningless or internally inconsistent. *Shelton*, 285 F.3d at 643. Since the Plan requires an employee making a claim for disability benefits to show not merely that he has an "illness," but that this illness renders him "continuously unable to perform the substantial and material duties" of his particular job with Baxter, Baxter's decision to deny benefits to Partee was a proper interpretation of Plan language. Partee's claim for disability benefits was denied according to the Plan's definition of "disability," due to Partee's failure to provide objective evidence correlating his illness with his ability to perform his job duties.

The remaining three of the five factors announced in *Shelton* are: (1) whether the

administrator's decision to deny benefits conflicts with the substantive or procedural requirements of the ERISA statute; (2) whether the administrator interpreted the relevant terms at issue consistently; and (3) whether the administrator's interpretation was contrary to the clear language of the Plan.  In considering these factors, the Court finds that Baxter acted carefully, reasonably, and appropriately in evaluating Partee's claim in light of the Plan's terms.  Partee was afforded a full and fair review of both the denial of his claim and the appeal of that denial.  Baxter relied not only on the opinion of its own reviewing physician but also on the opinions of Partee's own physicians.

It appears to the Court that Baxter ultimately found Partee not to be disabled due to a lack of correlation between his symptoms and his ability to perform the substantial and material duties of his job as Extruder/Blender Operator.  Accordingly, Baxter's decision to deny benefits was made after careful review, while comporting with ERISA and the clear language of the Plan.  All five *Shelton* factors therefore weigh in Baxter's favor.

**IV. Conclusion**

For the foregoing reasons, IT IS HEREBY ORDERED that Defendants' decision to deny benefits is AFFIRMED, Plaintiff's claim is DENIED, and this case is DISMISSED WITH PREJUDICE. An order of judgment shall be filed contemporaneously herewith, with all parties instructed to bear their own fees and costs.

IT IS SO ORDERED this 22nd day of August, 2013.

/s/ P. K. Holmes, III
P.K. HOLMES, III
CHIEF U.S. DISTRICT JUDGE